The next case for argument is 24-1551, Adnexus v. Meta. Thank you, Your Honor. My name is Charles Katropia, appearing for Adnexus. We appreciate the court hearing our case. In the district court's issuance of a dismissal order in this case in the pleading stage in a patent infringement case, only one limitation was considered not sufficiently clear. That limitation provided, and this is a patent against Facebook alleging that their lead ads program infringes the patent in suit. The one element in issue requires retrieving a user profile associated with the recipient where the user profile comprises at least delivery method preferences. In the court's opinion, it concluded that plaintiff makes no allegations that Meta lead ads retrieves any user profile that includes any delivery method preferences. The district court's finding fails for several reasons. One, that it failed to consider the allegations and evidence in all respects. It failed to consider them as true and in the light most favorable to the plaintiff. Specifically, you're talking about limitation 1F now, correct? Yes, 1F, yeah. So I understood the court's analysis. It was that your allegations essentially equate contact information with delivery preferences. Is that a fair assessment of what the district court was saying? Yes, and that's expressly stated in the patent, that they can be the same. But that's right. I've seen what you point to in the specification. But I guess I'm focused on, it's a plausibility standard. And the district court just says right out, it's not plausible to conclude that saying, here's my address, or here's my email address, is the same thing as saying, I want to be contacted by, say, email. How do we review that? The district court applied a plausibility analysis and said, this is not plausible. Well, I think, clearly, when you think about Facebook asking all 3 billion users for their email address in the sense of an ad, it is very plausible that that email address is a preferred delivery method. Can I point to one example? I want to focus it a little bit more. It seems to me, on its face, more than plausible, maybe even obvious, that contact information is a preferred delivery method, a preferred delivery method. Yes, you're right. But the real question is whether in the context of this claim that can be true because 1E uses contact information and 1F uses this different phrase. To me, that's what this comes down to. How much is it permissible to infer from this claim language alone that contact information cannot be a preferred delivery method? Well, I can't understand why it would be excluded as being a delivery method preference. Because what is your explanation for why different languages used in 1E and 1F? In what way would there be a sensible reason to use this different term in 1F from the term used in 1E? This is a quite open-ended question because I don't have an intuition about the answer. Well, I think the author of the patent uses them. And the patent recognizes that an email address, contact information, can be a preferred method of delivery. In fact, as we cite, it says in the specification, what is needed is a system and method of gathering. I sort of want to, for purposes of this question, accept what you're saying about the spec and about the intuitive meaning of contact information. What is it except I would like at least some stuff sometimes to come through that route. I'm trying to understand what, to me, is the one real trouble spot in your argument, which is the different usage of one phrase in 1E and a different phrase in 1F. And I may be mis-focusing my question, but that's what I want help on. Well, I think if contact information can be a delivery method preference, then in the language of the claim, in one sense, it might be used as contact information in one sense. More specifically, for claim 1F, the claim says specifically delivery method preference. Well, I'm not clear. I'm just looking at the language at 1F. It seems to me what you're rewriting 1F to say is it recites retrieving information and usable to discern the user's delivery method preference. But it doesn't say that. It requires retrieval of the delivery method preferences themselves, which, in my mind, distinguishes those from the contact information in 1E. Well, I think we pointed out in our claim analysis that Facebook has this information and it retrieves it whenever the process is executed. In other words, when you sign up and give your email address, it goes into your portfolio, into your profile. And whenever the system works its way through, it pulls that information, and that's what's being referred to in that claim. Retrieves that information, including delivery method preferences. So one aspect of the language here that I've just been thinking about it. I don't know what to make of it. The question isn't quite whether delivery method preferences is different from contact information. In 1E, the very specific thing is you cause a text field to be displayed, and then you receive contact information inputted into the text field by the recipient. And then you don't have that in 1F, because 1F is you already have some identifier information, and then you're going and finding it. So you don't need the user to give, for the first time, this identifying information. Nevertheless, why would the patent drafter use the term contact information in 1E and not in 1F? Well, I think they're treating them as the same. Contact information can be delivery method preference. And for that reason, it might require claim construction, but it's not necessarily a reason for dismissing the case. So just as a procedural matter, was their claim construction proceeding was briefing underway on claim construction?  This is the first approach to the Federal Circuit. We file our complaint, and the defendant filed for a motion to dismiss based on failure to show this one element. They failed to show most of the elements, and the court only focused on this one. So no claim construction. But did you request claim construction? Excuse me? Did you request claim construction? No, well, we weren't at that stage, Your Honor. But did you say, in opposing the 12B6 motion, did you say, you cannot find, on this particular ground, the absence of a plausible allegation without doing a claim construction, and we haven't procedurally had the opportunity to do that? We raised that in our objection. It was part of your opposition to dismiss was we need claim construction. Did you proffer any potential claim construction that would obviate what was being proposed? No, this was just in our response. But if you were to have to proffer a claim construction, what I think I just heard you said is even if, say, even though they use contact in 1E and don't in 1F, and they use delivery method preferences, the two mean the same thing? Is that your position on claim construction, that the two are synonymous? We didn't get to that stage, Your Honor. So I don't know that I can accurately express exactly how we would be arguing that. Well, the district court said they're sufficiently distinct that your allegations here are not plausible. Are you telling us that you have some good faith basis for construction that would say they're not so distinct that this is not plausible, or is that just not something you've even thought about yet? Well, in the description of the patent, it says contact information or other delivery method preferences. So it's equating the two in the body of the patent. So your position on claim construction is that the two are synonymous? Yes. And that accounts for the distinction in language? Because typically we would say, if you use two different phrases in two different places, that establishes that the two are different. And you're kind of asserting the opposite of that, which is even though they're two phrases, they're synonymous. Yes, Your Honor. And with regard to whether there's expressed evidence that a Facebook user selects and identifies their contact information as a delivery method preference, I would point the court to the ad from Facebook that is shown in the appendix on page 432 and referenced in Exhibit D, where it's an ad for the sale of homes. And the ad asks the user, how many bedrooms do you want? And you can put in the number of bedrooms. Then the ad asks, quote, how would you prefer we contact you? Close quote. To that, the user responds with an email address, a phone number, an address, or whatever. And the user's answer is submitted into their profile. Providing an email address in that case, where the ad asks, how would you prefer we contact you, is an expressed identification that it is a delivery method preference, and that was not considered by the court. So, this is my recollection, and just tell me if this is right and if not. So, I don't think there's any dispute that Exhibit B, not D, but Exhibit B, is, both of them are referenced in the First Amendment complaint, no doubt about that. And there's no dispute that Exhibit B was argued by you in response to the 12B6 motion. I think maybe Exhibit D was not argued by you in the 12B6 motion, and so there's a dispute about whether, even though, had you argued it, it surely should have been considered, but you didn't argue it, so it's a little hard to fault the district court on. So, that's what you now just said, is if you look at Exhibit D, it's quite clear. But, what if the other side is right in what I understand to be their point, that Exhibit D cannot be considered simply because you didn't, not simply, because you did not advance that to the district court? The defendant argues that we did not advance it, and if you look at our reply to their motion, it's referenced two or three times. The opposition to the 12B6 motion. Yes, the opposition. The motion, and before the district court, we referenced, am I remembering that you made reference to it, not with respect to 1F, but with respect to other claim elements? Yes, it's just referenced generally, and the court is directed to it as showing evidence that, to the issue that was before the court. Because the court had to consider seven different elements, all of which are addressed in our response. And, we referred to this, for example, this one ad that I just mentioned is referenced in Exhibit D, and many other are referenced as well. And, the court just failed to consider it. The court found that there was no allegation made with regard to this particular issue, when indeed it was. And, another very specific point in Exhibit D is found on page 102 of the appendix, where it shows Facebook has 10 million advertisers, and it gives them information on how to put out an ad. At page 102, there's shown a display of what Facebook presents to advertisers. And, it shows a list of information under the categories, email, phone, address. And, under categories, the first one is contact, and it has email, phone, address. And then, the Facebook ad says, tailor your question to lead ads, so you uncover their preferences. To me, that is a direct, or certainly a presumption, that Facebook recognizes that whenever you give your email address, they're asking you for an address that advertisers can reach you at. Counsel, let me ask you just one other thing. The district court only talked about 1F, and finding that deficient didn't address the other arguments that NEDA had made. But, they asked us to affirm on the alternative grounds of deficiencies on 1E. And, as I understand your claims, it's conditional. You either practice 1E, or you practice 1F. Yes. Do you agree that lead ads has to be capable of doing 1E, and capable of doing 1F, not necessarily at the same time, but that, in some instances, it has to be able to do E, in other instances, it has to be able to do F. Is that required? Well, for patent infringement, it wouldn't be, but for Facebook lead ads, it does occur. But, for infringement, A or B would result in infringement. And, your allegations are that lead ads does, at times, practice 1E, and at other times, practices 1F. Both of those are infringing in your allegations. Well, I think that does occur, but I think our allegations were targeted to the court finding that 1F was not found. And so, 1F is found in the second sequence of activity that the patent claim covers. But, you could, you can trace every element on the Facebook lead ads. For you to prevail on this appeal, we have to grapple with the alternative grounds for affirmance. Do you agree with that? Well, the court didn't consider that. But, do we have, it's briefed to us. Do we have to reach it, or do we not have to? I don't think so, Your Honor. If we didn't reach it, would you agree that it has a chance to renew that argument back at the district court, as well as the other ones that weren't reached? They could, and we would certainly welcome the case to be remanded with the right to file an amended complaint with allegations, because there are many allegations that can be raised, and the problem is we're not given the opportunity to do that. Okay, can I just interrupt you, because time is short. I just had a couple housekeeping questions. One is, you never challenged the district court's standing order, right? Yes, Your Honor. And you didn't seek leave to further amend the complaint, just to be clear. That's right, because the court said it would not be granted. And the standing order precluded a review of what the court had decided. Under the court's statement. And then, there's an, as I understand from the record, there's a pending ex parte re-exam at the PTO. What is the status of that? Has there been further development since then? It's proceeding, the patent office has determined that other claims are patentable, but the one claim that is, this one claim which is under review, is now before the patent Trigger Department for appeals. If the PTO agrees with the examiner that one in four are rejected, then what consequences, if any, does it have to this case here, your district court case? Well, the patent will obviously issue with another claim that the patent office has indicated is patentable. We asked the defendant to postpone this proceeding pending the outcome of the patent office action, they refused. So we go back to delay which proceeding? The one in the district court, or the justice appeal? The one in the district court. Thank you. Let's hear from the other side. Thank you.  Good morning, may it please the court, Your Honor. The patentee used different words, Judge Tronco, because the patentee meant different things. Contact method preferences are not contact information. How can we decide that without a full claim construction proceeding? Neither party advocated for a claim construction. We certainly didn't advocate for anything other than the broad, the normal meaning of the words. No particular meaning, but importantly, the patent treats the two as distinct, and EdNexus has continuously treated the two as distinct. Right, so to say that A and B are distinct can mean they are non-overlapping. It can also mean A is a proper subset of B, or B is a proper subset of A. They don't need, for their case, that they would be perfectly happy if contact information was one form of preferred delivery method. And the word distinct does not negate that conclusion. Your Honor, I don't think they've ever made that argument, that one is a subset of the other. One is not a subset of the other, but their argument is. I assume they have not used that kind of mathematical or logical terminology, but they say over and over again, the spec makes clear what actually English language would also suggest, that contact information is one kind of preferred delivery method. So I think you get the, I mean, it seems to me as a, purely as a matter of language, of course contact information is a preferred delivery method. Why else are you giving contact information? So you need the argument that says, because different, one term is used in 1E, and one term is used in 1F, that kind of, you can never have, under case law or something, a construction that allows the different terminology to be in the subset relation. Do we really have that kind of case law? I assume we do have a general practice, general rule, that if different words are used, they're supposed to mean different things. But really, is that kind of so absolute as to preclude one being sometimes part of the other? Your Honor, we would disagree that in this case, one is sometimes part of the other. And again, they have not made that argument. They're not saying that a particular piece of contact information is also a type of delivery method preference. What they're saying is that in some circumstances, delivery method preferences can be discerned from the contact information that's provided. I think that's only part of what they're saying. If I can go back to the procedural question Judge Taranto was asking, at 8403, as part of their opposition to your motion to dismiss, their first argument is that your motion is premature because it relies on a particular, admittedly implied, construction of delivery method preferences. Why isn't that correct, that your whole position does rely on an implied, very narrow construction of delivery method preferences? And why isn't it best, if you're right, that we need to remand this for a full claim construction process? Well, Your Honor, we have never advocated for anything other than the ordinary meaning of these terms, and certainly they have never advocated. Well, maybe they don't have the ordinary meaning here. I mean, I don't know. Claim construction wasn't done, and they opposed your motion, as I think they're allowed to, by saying it's premature, we need claim construction. Well, Your Honor, they at least have to say why they need claim construction. They at least have to oppose it in a way that's meaningful. And if we step back and think about the context of this patent, the patent begins in the background by explaining what the prior art did. It had email addresses, and it sent advertising to those email addresses, and it had the effect of putting advertisers in a bad light because people were getting emails that they didn't want. And so it takes a different tack, and it says, well, beyond these pieces of information, we want to extract the user's preferences for delivery methods in addition to these pieces of contact information. Counsel cited to Appendix Page 102, which is part of Exhibit B to the First Amendment complaint, and what you'll see there in their description of how the system operates that they've accused of infringement, there are five distinct contact methods provided, five pieces of information, two email addresses, two phone numbers, and an address. The idea of the invention is that those pieces of contact information, yes, they tell you various ways that you can contact this individual, but advertisers wanted more in their view, and they wanted to know, in particular, the preferences that users had for how they would be contacted. None of that is in Exhibit B at Page 102, nor do they say it is. Their argument is that, okay, let's imagine a situation where a user only enters one field, and then the advertiser figures that out. The advertiser can then discern that that must be a contact method preference. That's not a very attenuated line of reasoning. The problem with the line of reasoning, Your Honor, is that the claim is not directed to what gets discerned downstream. It's directed to what is already in the database. Advertisers in the system that they've accused want information in the forms. The advertisers take the information. Some advertisers might pick email, some advertisers might pick email, phone number, and street address. It's up to the advertisers. All the system does that they've accused of infringement, all it does is it pre-fills the forms that advertisers, you know, the pieces of information that advertisers ask for, that the system happens to know. That's all it does. Now, they have pointed to Appendix Page 432 today, and I should point out that that was not in the record anywhere. They created that image for the purposes of this appeal. It's only referenced, to the extent they say it is, at a URL that's in Exhibit D, which they didn't erase anyway. In Exhibit D? Exhibit D, right. That's what they point to. And that's the one that their opposition to 12B6 cited, but didn't rely on in the 1F discussion. Do I remember that right? You do remember that correctly, Your Honor. They cited it at the very end of their opposition, and they cited it in respect to what they had put meta on NOVASET. But when they talk about why limitation 1F, they had plausibly put it. They only referred to Exhibit D. But the problem with what they show on Appendix Page 432 is not just that it's orphaned, or that it was not in the record below. It's that it doesn't help them, because it's an example of an advertiser wanting to learn a communication preference, and what the system tells the advertiser is, well, why don't you formulate a custom question? We'll let you create a question on the fly that you can ask the users about. And the question is, how do you want to be contacted? That is an inquiry about a user's delivery method preference. And it's presented as a custom question for the simple reason that it's not in the system already. So, Your Honor, there is a difference between a delivery method preference and contact information? Does what you just said square with the use of the indefinite article A in front of preferred, in front of what delivery method preference? Or, I guess not A. At least delivery method preferences. If you've given one, presumably, and one and only one, that is an A delivery method preference. And if the advertiser, if you've given several, the advertiser may want to know which one is best. But the first would still fall within this language, right? This doesn't say the single preferred delivery method. Okay, do you want to dispute my characterization? Whether it requires one or more is something that the parties have not gotten into, but the issue is it at least requires one preference. And a preference is a preference for a delivery method. It's not just a piece of contact information. When people saw... You keep saying that, but I don't know if that's right. I mean, you argue in your red brief right at the first page, mere contact information cannot plausibly double as the claimed delivery method preferences. And you say that's an implausible inference that one could even discern delivery preferences from contact information. If I find that an entirely plausible allegation, what do I do with this case? You affirm on the alternative ground of limitation 1E. We could come to that. But should I read that as a... No, you don't think it's plausible, but if I think it's plausible, does that mean I cannot affirm on the 1F grounds? If you think it was an abusive... Well, let me step back. If the court finds that you disagree that it was plausible or that it was implausible, then I think you have to get to limitation 1E. I mean, that was the basis of the district court's analysis was the implausibility. And I know that I've said this a couple of times, but it is implausible because what they're trying to extract from users and send on to advertisers is how the users want to be contacted in a system in which the user signed up for a social media platform and they told the host of the social media platform how they wanted it to contact it with an email address. I think I understand your question, but let me just be sure. JA-9 is the one sentence analysis on this point of the district court. The district court says, the court finds, my emphasis on finds, contact information sufficiently distinct from delivery method preferences to find that plaintiff's allegations insufficient to state a plausible claim for direct infringement. I don't know whether to read that as a finding of fact by the district court, which I think you'd concede the district court can't do on motion to dismiss, or an implicit claim construction that contact information is, as you argue, so distinct from delivery method preferences that these allegations are plausible. But then I'm stuck with, I think the plaintiff asked for the opportunity to have claim construction. So which is it? Is it a factual finding that's premature? Is it an implicit claim construction that's premature? Or is it something else? It's something else. Okay. So I think if you read that in context, Your Honor, this is the part of the opinion where the district court is responding to the one argument EdNexus did make, where the two types of information, one can be sort of gleaned from the other, and the district court understood that to be akin to a doctrine of equivalence analysis. They mentioned doctrine of equivalence in their complaint, and I think the district court went a little farther than it needed to here in saying that EdNexus equates pre-filled forms based on specific contact information as equivalent to the user's delivery method preferences. And then what you see in that next sentence that Your Honor just read, is the district court's analysis of that hypothetical doctrine of equivalence theory. That's how I read it. I would like to talk about limitation 1E, because I think at this point of the case, there's nothing really EdNexus can do. Because at the district court... Before you get to that, I think Judge Stark asked your counterpart a question about whether because this is a method claim, it might not matter in an accusation that your users or your system performs this method, whether there would be infringement if all it ever did was perform 1F and not 1E, because these are alternative conditions. That's not how we read the court's case law. That's not how we read HITERA. In a method claim, yeah? A method claim, Your Honor, that they have accused a system of infringement. So when it's used? Well, they've accused the system as the accused instrumentality. They have never said to the district court that they only needed to prove 1F and they didn't need to prove 1E. So this argument about an alternative, like two branches of the claim, they never make that argument. That's forfeited. And on appeal, they have not defended that limitation 1E is in the accused system. So at this point, they're stuck. They forfeited the argument they made before and they didn't make on appeal the argument they made below. There's no way for them to get out of this when it comes to limitation 1E. But Your Honor, back to the branching of the claim. We don't need HITERA to say that you can have a system that only performs one part of a claim in order to show infringement. We understand that case to say that the computer in that case had to be programmed to perform both branches. But more importantly, Your Honor, when AdNexus got its patent, or when the applicant at that point got its patent, it argued that the reason that it should get its patent was because the prior art didn't teach this branched method with all the limitations being performed. That's what it argued to the patent office. So AdNexus should not be able to wiggle out of an argument like that and accuse a system of infringement, which- That's, I mean, that's feeling, I don't know, very claim construction-y. I mean, we don't have, no? Your Honor, there's no dispute about how those branching limitations work, to my knowledge, and they have not, on appeal, argued that the LEAD-AD system performs 1E. That's the only thing they argued below. They never said to the district court that they didn't have to meet limitation 1E. That's something they've come up with now. It's something we disagree with. It's something we think the case law doesn't support. Can I just ask you, if you don't mind, on the motion to amend? I don't know if we would have to reach it or not, but this standing order, essentially, that the district judge has, essentially seems to say that upon meeting and conferring with the defendant and filing a new complaint, per se, the plaintiff has filed their, quote, best case as a result, but that's without any input from the district court. What it thinks of the defendant's pointing out of alleged deficiencies. Is that really, is that a fair exercise of discretion to have a standing order that says, I'm gonna treat your amendment complaint as your, quote, best case, before I, the judge, have even said anything about what here, meta, argues as a deficiency? Well, your honor, in this case, the district court did more than that. It didn't just apply its standing order without thinking about it. You'll see the analysis at the end of its opinion where it explains that, in fact, EdNexus did not ask to amend, that it did comply with the standing order, and so it mentions the standing order, but it also says that the court finds plaintiff had stated its best case. With respect to the standing order itself, whether it's fair, I think this case is very close, if not an easier case than this court's decision in the Lida versus CDS case, where I believe in that case the order said, you pick, you go one way or the other. You either amend your complaint or you defend against a motion to dismiss, and in that case, the party defended, lost, tried to amend again, the district court dismissed, and this court affirmed. And are there other district courts that have a standing order that forces that choice? Because it raises this question about a choice before you have any input from the judge. So this standing order is not the choice standing order. That was the standing order in Lida that this court affirmed. I'm not aware of other courts with a standing order akin to what was in Lida. In this case, the standing order requires notice to the plaintiff, the plaintiff got the notice, it requires the plaintiff to fix, and then it requires the motion to be limited to what the plaintiff was warned about. And that seems, you're giving the plaintiff even more than the plaintiff had in mind. Thank you. Thank you very much. We'll restore three minutes, everybody. First, I would point out that the district court in its ruling noted that there were four elements, one D, one E, one F, one H, that were before the court. The court said the court need not consider each element because in the FAC, like sufficient facts, as to any one element, the entire claim fails. And then it went on to target one F. So it didn't even consider one E. And in our infringement analysis, we cover all of that. And the defendant argued that we made no mention in our brief about Exhibit D, which we clearly did, at least on two occasions. So that is in the record. And I don't understand how the defendant can now raise an issue under one E, which wasn't even considered by the court as being in fault. Because Facebook does indeed do all of those sequences. And it is clear that what they're asking for and what they're getting is an email address that is preferred by a user so that that information can reach that user. It's almost, it doesn't meet the plausibility standard because it simply calls for enough facts that raise a reasonable expectation that discovery will reveal evidence, and it clearly will. And as I pointed out, the evidence on page 432 is a Facebook ad that asks for, how do you wish, how do you prefer we reach you? And the other issue before the court is whether the defendant here should have had more opportunity than it did to amend its case to meet the requirements. The standing order is not aligned with Rule 15, which instructs the court shall freely give leave when justice requires. You leveled no challenge to the standing order in the district court. Why should we excuse you for not having challenged it there and letting you challenge it here? Well, the court, the standing order, in effect, precluded a challenge. It says no further amendment will be prevented. Couldn't you have just dropped a footnote somewhere just saying, just to preserve our appellate rights, we object to the standing order as inconsistent with Rule 15, something like that? Well, that would have been a good thing to do, Your Honor. But from what the court was ruling, we understood that it was fruitless to do that. And I think Rule 15 required that the court indicate that it would dismiss, but allow us to amend the complaint further. We could easily point out, as I did on page 532, where the ads ask the user, what contact do you prefer we use? So it clearly meets 1F, there's no question about that. And there is even more evidence now that can be put into evidence that's available with regard to how Facebook uses its program, how it collects information, how it instructs and asks questions about which of your emails do you want us to use. And that information should be permitted either in an amended complaint or in further action before the district court. Thank you. Thank you. Both sides, the case is submitted.